UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STATE OF MISSOURI, ex rel.,  )<br>JEREMIAH W. (JAY) NIXON,  )<br>Attorney General of the State of Missouri,  )<br>  )<br>  Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>DONALD H. RUMSFELD, in his official  )<br>capacity as Secretary of Defense of the  )<br>United States; ANTHONY J. PRINCIPI,  )<br>in his official capacity as Chairman of the  )<br>Defense Base Closure and Realignment  )<br>Commission; JAMES H. BILBRAY;  )<br>PHILIP E. COYLE; HAROLD W.  )<br>GEHMAN, JR.; JAMES V. HANSEN;  )<br>JAMES T. HILL; LLOYD W. NEWTON;  )<br>SAMUEL K. SKINNER; and SUE ELLEN  )<br>TURNER, in their official capacity as  )<br>members of the Defense Base Closure and  )<br>Realignment Commission,  )<br>  )<br>  Defendants  )<br>  ) | Case No. 4:05CV01387 JCH |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction. On August 26, 2005, the Defense Base Closure and Realignment Commission (the "BRAC Commission" or "Commission") recommended the realignment of the 131st Fighter Wing of the Missouri Air National Guard. Plaintiff seeks to enjoin the BRAC Commission from including this recommendation in its final report and recommendation to be sent to the President on September 8, 2005, on the basis that the

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Federal Government cannot realign an installation of Missouri's State National Guard without obtaining the governor's consent, pursuant to 10 U.S.C. § 18238 and 32 U.S.C. § 104(c).[1]

## I.  BACKGROUND[2]

The BRAC Commission was created by Congress with the Base Closure and Realignment Act of 1990, 104 Stat. 1808, as amended, note following 10 U.S.C. § 2687 (the "BRAC Act"). The Secretary of Defense provides the Commission with a list of military installations that the Department of Defense recommends for closure or realignment. The Commission then evaluates these recommendations, makes changes it deems necessary, and submits its final report and recommendation to the President. The President may either approve or disapprove the report as a whole.  If the President approves the report, it is sent to Congress.  If the President disapproves the report, the Commission must prepare a new report and submit it to the President. If the President disapproves the new report, the process is over and none of the Commission's recommended actions will occur.  If either the initial or a resubmitted report is sent to Congress, Congress must enact a resolution approving or disapproving the report as a whole. If Congress does not disapprove the report within 45 days, the Secretary of Defense is required to act on the recommendations. BRAC Act §§ 2912-14.

---

[1] In its Complaint, Plaintiff alleges that I) the recommendation is outside the scope of the BRAC Commission's statutory authority, II) the recommended action is outside of the powers of the Federal Government, III) the recommended action violates the Militia Clause of the United States Constitution, and IV) the recommended action violates 10 U.S.C. § 18235(b)(1).

[2] For an in depth discussion of the history of the National Guard and the BRAC Commission, see Rendell v. Rumsfeld, A.05-CV-3563, slip op. at 2-7, 2005 WL 2050295 (E.D.Pa. Aug 26, 2005).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

On May 13, 2005, Secretary of Defense Rumsfeld sent the Department of Defense Base Closure and Realignment Report ("DOD Report") to the BRAC Commission. The DOD Report recommended the realignment of the 131st Fighter Wing. (Joint Stipulation ¶ 2). On August 26, 2005, the BRAC Commission modified the DOD Report's recommendation regarding the 131st Fighter Wing. (Joint Stipulation ¶ 3). On August 26, 2005, Plaintiff filed the Complaint in the instant suit. (Complaint, Doc. No. 1). On September 1, 2005, Plaintiff moved for a Preliminary Injunction, and to expedite consideration of the Motion for Preliminary Injunction.

## II.  ANALYSIS

The Court must first determine whether it has subject matter jurisdiction in this case. The Court has jurisdiction only over cases and controversies. U.S. Const. art. III, § 2. Plaintiff alleges that the matter is ripe for review because Secretary Rumsfeld "has finally and completely fulfilled his reporting requirements with respect to the 2005 round of alignments and closures to military installations" and because the BRAC Commission "adopted the Secretary's recommendations relating to the 131st Fighter Wing and only the ministerial act of delivering the response to the President remains." (Complaint ¶¶ 47, 48).

The Eighth Circuit has stated that "[t]he ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." Pub. Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, 345 F.3d 570, 572 (8th Cir. 2003) quoting Nebraska Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1037 (8th Cir. 2000) (internal quotation marks omitted). The ripeness inquiry requires a court to examine both "the fitness of the issues for judicial decision and the hardship to

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the parties of withholding court consideration." Pub. Water Supply Dist., 345 F.3d at 572-73, quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967). A party seeking judicial relief must satisfy both the fitness for judicial decision prong and the hardship prong. Pub. Water Supply Dist., 345 F.3d at 573.

The fitness prong implicates the court's ability to determine whether a case would benefit from further factual development. A case is more apt to be ripe if it is not contingent on future possibilities. Id. To satisfy the hardship prong, a plaintiff must allege more than abstract injury. It must allege that it has sustained or is in immediate danger of sustaining a direct injury resulting from the challenged official conduct. Id. Plaintiff has failed to meet either prong. The report of Secretary Rumsfeld and the report and recommendation of the Comission are preliminary actions contingent on future possibilities. The President and Congress may approve or may disapprove the action of the Commission. Thus, it is premature to determine what, if any, effect their actions may have on Plaintiff. Moreoever, until the decisionmaking process is complete and contingencies regarding what action the President and Congress may take are removed, any alleged injury to Plaintiff is speculative. Plaintiff's claims are therefore not ripe for judicial review.

This conclusion is also compelled by the Supreme Court's decision in Dalton v. Specter, 511 U.S. 462 (1994). In Dalton, which involved a challenge to the President's approval of the 1991 BRAC Commission's recommendations to close a naval shipyard, the Supreme Court ruled that:

> The reports submitted by the Secretary and the Commission . . . carr[y] no direct consequences for base closings. The action that will directly affect the military bases is taken by the President, when he submits his certification of approval to Congress.

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

>Accordingly, the Secretary's and Commission's reports serve more like a tentative recommendation than a final and binding determination. The reports are, like the ruling of a subordinate official, not final and therefore not subject to review.

Dalton, 511 U.S. at 469-70, quoting Franklin v. Massachusetts, 505 U.S. 788, 798 (1992) (internal citations and quotations omitted).[3]

Unlike Dalton, the present action was not brought pursuant to the Administrative Procedures Act ("APA"). The requirement for final agency action, however, as a prerequisite to judicial review still applies. In Chicago & Southern Air Lines v. Waterman S. S. Corp., 333 U.S. 103 (1948), plaintiff sought review, not pursuant to the APA, of a recommendation of the Civil Aeronautics Board to the President who made the final decision. Finding the recommendation unreviewable, the Court stated that "administrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." Id. at 112-13, citing Rochester Tel. Corp. v. United States, 307 U.S. 125, 131 (1939). In both Waterman and Dalton the Supreme Court has clearly precluded federal court review of non-final agency action. Lacking final agency action, Plaintiff's claims in this action are unreviewable and must be dismissed for lack of subject matter jurisdiction.

### III.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** for lack of subject matter

---

[3] Plaintiff relies on the opinion in Rendell. Having carefully reviewed that decision, the Court respectfully disagrees with its analysis.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Preliminary Injuction (Doc. No. 3) is **DENIED** as moot.


Dated this 7th day of September, 2005.

                                                /s/ Jean C. Hamilton
                                                UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com